**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EL BAIK FOOD SYSTEMS CO S.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO.** |
| | ) | |
| | ) | |
| AL-BAIK FOODS TRADING PRIVATE | ) | **JURY TRIAL DEMANDED** |
| LIMITED; AL- BAAIK INC; AL-BAAIK | ) | |
| CHICAGO LLC; AL-BAAIK MIDWEST | ) | |
| LLC, MOHAMMAD F. THARA; | ) | |
| MIREHTESHAMUDDIN A. KHAN; SHAIK | ) | |
| IRSHAD AHMED; MOHAMMAD ANAS | ) | |
| HASSAN; SAMEER AHMED, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff El Baik Food Systems Co S.A. ("Albaik"), for its complaint against Al-Baik Foods Trading Private Limited ("AB Foods Trading"), Al-Baaik Inc. ("AB Canada" and collectively with AB Foods Trading, the "AB Foods Trading Defendants"), Al-Baaik Chicago LLC ("AB Chicago"), Al-Baaik Midwest LLC ("AB Midwest"), Mohammad F. Thara ("Thara"), Mirehteshamuddin A. Khan ("Khan"), Shaik Irshad Ahmed ("Ahmed"), Mohammad Anas Hassan ("Hassan"), and Sameer Ahmed ("S. Ahmed", and collectively with AB Chicago, AB Midwest, Thara, and Khan, the "AB Chicago Defendants") (together, the AB Foods Trading Defendants and the AB Chicago Defendants are referred to as "Defendants"), alleges:

### <u>NATURE OF THE ACTION</u>

1.     This is a civil action seeking equitable and monetary relief under the laws of the United States, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act"), including for trademark infringement, contributory trademark infringement, vicarious trademark infringement, trademark

counterfeiting, contributory trademark counterfeiting, vicarious trademark counterfeiting, and unfair competition in violation of the Lanham Act, and under the laws of Illinois, including for unfair competition and deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510 *et seq*., and under the common law of the State of Illinois for trademark infringement and unfair competition.

2. Albaik's ALBAIK fried-chicken restaurants comprise one of the world's most iconic and beloved fast-food chains. Founded by Mr. Shakour AbuGhazalah in 1974 in the Kingdom of Saudi Arabia (KSA), Albaik was created to fill a need for high-quality, affordable food served fast and courteously in a clean and inviting environment. Mr. AbuGhazalah invested his hard-earned savings to bring this concept to fruition. As a gesture of respect to its valued customers, Albaik selected the name ALBAIK, inspired by the Turkish word for "Bey," meaning an important person or "sir," as the name of its restaurant chain. In the ensuing five decades, Albaik worked extremely hard to build its business and the ALBAIK brand and, importantly, to earn the public's trust. This commitment paid off. Today, Albaik is an international phenomenon with an extensive and loyal customer base.

3. Building on its commercial success in the KSA, Albaik added restaurants throughout the Middle East and Asia. The public's appetite for ALBAIK fried chicken continued growing throughout the region, and the world. For example, when Albaik opened its first restaurant in Dubai in 2021, *Esquire* reported that on the first day "thousands still waited in huge lines to get a taste of the Saudi fried chicken phenom." (*see Al Baik draws massive crowds on wild first day in Dubai*, ESQUIRE MIDDLE EAST, https://www.esquireme.com/news/53323-watch-albaik-draws-massive-crowds-on-wild-first-day-in-dubai) (last visited July 3, 2025)). U.S. consumers share this enthusiasm for the ALBAIK brand with many taking to social media asking Albaik to open

restaurants in their hometowns, including Chicago. Albaik has licensed commercial activities in the U.S. and continues working toward building its presence here through brick-and-mortar stores and/or other commercial activities.

4. With Albaik's immense success and fan base in their sights, Defendants emerged with a scheme to pass themselves off as Albaik and profit from the instant goodwill and reputation Albaik's name carries among consumers—earned through decades of hard work and dedication. Rather than developing their own unique brand and business, Defendants disguise themselves as Albaik by adopting the same name and copycat marketing to dupe prospective U.S. franchisees and consumers into believing that they are the real ALBAIK brand. Defendants' scheme will soon culminate in the opening of a counterfeit "AL-BAAIK" fried chicken restaurant in Chicago. Defendants' motives are clear: to give their new restaurant instant recognition in a competitive fast-food marketplace by deceiving consumers into mistakenly believing that it is an expansion of or otherwise associated with Albaik's renowned ALBAIK brand.

5. Defendants' ploy in the U.S. follows a long pattern of infringement abroad, which is also the subject of litigation between the parties. Defendants are now poised to prey on U.S. consumers who will undoubtedly line up to taste what they were tricked into believing is genuine ALBAIK fried chicken, only to experience an inferior knock off. The irreparable harm caused by Defendants' willful infringement is particularly damaging given its potential to spoil the Chicago market for Albaik's subsequent market entry with the real ALBAIK brand.

6. To avoid the likely confusion and irreparable harm to the valuable goodwill that Albaik has earned in the ALBAIK brand through nearly fifty years of hard work and investment, Albaik brings this action to stop Defendants from opening their counterfeit restaurant in Chicago and to prevent the consumer harm that will likely follow.

3

## THE PARTIES

7.      Plaintiff El Baik is a Luxembourg Société Anonyme with Luxembourg offices at 69, Boulevard de la Pétrusse, L-2320 Luxembourg.

8.      Defendant AB Foods Trading is an Indian corporation incorporated under the laws of India, with its principal place of business located at 1/261 Viram Khand 1, Gomti Nagar, Lucknow - 226010, Uttar Pradesh, India.

9.      Defendant AB Canada is a Canadian corporation incorporated under the Canadian Business Corporations Act with its principal place of business located at 45 Sunnyview Road, Brampton ON L7A 3E4, Canada.

10.     Upon information and belief, AB Canada and AB Foods Trading are related entities, sharing the same officers or directors and are under common operation and/or control.

11.     Defendant AB Chicago is organized under the laws of Illinois, with its principal place of business located at 6250 N. California Ave, Chicago, Illinois 60659-2608.

12.     Defendant AB Midwest is organized under the laws of Illinois, with its principal place of business located at 6250 N. California Avenue, Chicago, Illinois 60659-2608.

13.     Upon information and belief, Defendant Thara, is a resident of Cook County, Illinois, has an ownership interest in AB Chicago and AB Midwest, and has personally participated in, directed AB Chicago's and/or AB Midwest's employees to engage in, or otherwise authorized and approved the infringing activities described herein.

14.     Upon information and belief, Defendant Khan is a resident of Kane County, Illinois, has an ownership interest in AB Chicago, and has personally participated in, directed AB Chicago's employees to engage in, or otherwise authorized and approved the infringing activities described herein.

4

15.     Upon information and belief, Defendant Ahmed is a resident of Cook County, Illinois, has an ownership interest in AB Chicago and AB Midwest, and has personally participated in, directed AB Chicago's and/or AB Midwest's employees to engage in, or otherwise authorized and approved the infringing activities described herein.

16.     Upon information and belief, Defendant Hassan is a resident of Cook County, Illinois, has an ownership interest in AB Midwest, and has personally participated in, directed AB Midwest's employees to engage in, or otherwise authorized and approved the infringing activities described herein.

17.     Upon information and belief, Defendant S. Ahmed is a resident of Cook County, Illinois, has an ownership interest in AB Midwest, and has personally participated in, directed AB Midwest's employees to engage in, or otherwise authorized and approved the infringing activities described herein.

18.     Upon information and belief, the AB Foods Trading Defendants and the AB Chicago Defendants are under a franchisor/franchisee and/or licensor/licensee relationship.

## JURISDICTION AND VENUE

19.     This Court has subject-matter jurisdiction pursuant to 15 U.S.C. § 1121 (jurisdiction over Lanham Act claims); 28 U.S.C. §§ 1331 (federal question), and 28 U.S.C. § 1338 (claims related to trademarks and unfair competition). This Court also has supplemental jurisdiction over the state and common law claims alleged herein pursuant to 28 U.S.C. § 1367 because those claims are so related to the claims arising under federal law that they form part of the same case or controversy under Article III of the United States Constitution.

20.     This Court has personal jurisdiction over the AB Foods Defendants because they purposely avail themselves of the privilege of conducting activities in the United States,

including in Illinois, and conduct business in Illinois such that they can reasonably anticipate being haled into court in Illinois.

21.     The AB Food Defendants' acts form a substantial part of the events or omissions giving rise to Albaik's claims and any confusion in the marketplace caused by the AB Foods Defendants' conduct is taking place in Illinois.

22.     Therefore, the Court has personal jurisdiction over the AB Foods Defendants pursuant to the Illinois long-arm statute 735 ILCS §§ 5/2-209 *et seq.*, and such assertion is in accordance with the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

23.     This Court has personal jurisdiction over the AB Chicago Defendants because they reside and are conducting substantial business in the Northern District of Illinois. In addition, the AB Chicago Defendants' acts of trademark infringement and unfair competition in the Northern District of Illinois form a substantial part of the events or omissions giving rise to Albaik's claims.

24.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) and (c) because this Court has personal jurisdiction over the AB Foods Defendants and the AB Chicago Defendants reside in the Northern District of Illinois and a substantial portion of the events complained of herein took place in Northern District of Illinois.

## ALBAIK'S COMMERCIAL SUCCESS & FAMOUS BRAND

**A.     Albaik's Origin and Growth**

25.     From a single location in Jeddah, KSA, Albaik expanded into cities across the KSA. It quickly garnered widespread attention as the first fast-food restaurant in the KSA to offer

6

signature halal chicken dishes using an innovative cooking method called "broasting" – a pressure-fried cooking technique that results in incredibly tender meat with an irresistible crispy coating.

26.    Albaik opened branches in religious cities like Makkah and Medinah, making a stop to one of its ALBAIK restaurants part of the religious pilgrimage experience for millions. During the pilgrimage season, Albaik's Mina location serves about 250,000 meals *a day*, more than any other single restaurant.

27.    Soon, customers from all over the KSA were making trips to Albaik's restaurants to try its famed fried chicken. In an article dubbed "The iconic Saudi chicken chain has become a cultural icon across the Middle East and far beyond—here's the inside story," *Esquire* observed, "[a]sk anyone who grew up in Jeddah during the 1980s and 1990s, and they will likely have an 'AlBaik' story – the lengths they've gone to attain a box or two of Saudi Arabia's most beloved broasted chicken brand." *See* Shaistha Khan, *How AlBaik became a cultural phenomenon in the Muslim world*, ESQUIRE MIDDLE EAST, https://www.esquireme.com/culture/albaik (last visited July 3, 2025).

28.    Albaik's popularity and signature chicken dishes spread beyond the KSA. For years, Albaik expended substantial time, money, and resources to expand internationally, strategically opening restaurants all over the Middle East, including in Bahrain, the United Arab Emirates, and Kuwait. Outside the Middle East region, Albaik operates in East Asia and is set to expand into South Asia.

29.    Albaik has developed a deliberate expansion strategy, prioritizing quality and brand integrity over rapid growth. When entering new markets, Albaik carefully selects locations and partners, ensuring that every outlet delivers the same high standards of food, service, and cleanliness associated with its brand.

30.     Over time, Albaik has established itself as a culinary institution across the Middle East and around the world. A recent report found that Albaik is *the* top fast-food brand in the KSA, outperforming even McDonalds and KFC. *See Saudi Chain Albaik dominates the KSA fast food market*, QSR MEDIA, https://qsrmedia.com/research/in-focus/saudi-chain-albaik-dominates-ksa-fast-food-market (last visited July 3, 2025).

**B.      ALBAIK Food & Restaurants**

31.     ALBAIK restaurants are a beloved staple, renowned for their reputation, quality, and affordability that appeal to people of all ages and backgrounds.

32.     Albaik's fried chicken stands out for its exceptionally crispy, golden coating and juicy, tender meat, achieved through a unique cooking technique. Beyond the method of preparation, the flavor of ALBAIK chicken distinguishes it from competitors. Albaik's signature eighteen (18) spice blend, used in its chicken marinade to create a distinctive savory and aromatic flavor, is a proprietary seasoning and remains a closely guarded family secret to this day.

33.     Albaik offers its famous broasted chicken in various meal boxes, such as 4-piece and 8-piece combos, each served with sides of customers' choosing. In addition to its signature chicken, Albaik offers a variety of other menu items, including fish fillet burgers, sandwiches, hummus, fries, shawarma, shrimp pieces and meals, falafel, egg sandwiches, and maamoul.



34.    Albaik's sauces, such as its legendary garlic sauce, are also a defining part of its appeal. Praised for their unique blend of spices, tangy notes, and versatility, ALBAIK sauces pair seamlessly with ALBAIK chicken, fries, and sandwiches.

35.    Albaik's strategic emphasis on ensuring the highest standards in food safety and quality with a continual goal of customer satisfaction has earned it the trust of millions. Customers consistently praise Albaik's cleanliness protocols and rigorous food preparation standards that have made Albaik a top choice for customers who value both quality and affordability.

36.    Beyond high-quality food, Albaik's success is also rooted in its commitment to serving its employees and its communities. Albaik invests years of training in its employees and supports them in obtaining degrees from international universities. Albaik also supports sports initiatives for children and young adults and has created numerous charitable initiatives. This dedication to making a positive impact has further strengthened Albaik's reputation as a widely admired, socially responsible enterprise.

**C.** **ALBAIK's Branding and Visual Brand Identity**

37.     Since its founding, Albaik has offered its food products and restaurant services exclusively under the name ALBAIK. To further stand out from its competitors, Albaik adopted its iconic logo—comprising a smiling chicken with big, cheerful cheeks, tipping its top hat—each element carefully selected to evoke a sense of happiness in the minds of customers.



38.     Albaik has extensively used and advertised its ALBAIK mark and logo (the "ALBAIK Marks") for food products and restaurant services in the Middle East and throughout the world, including in the United States. Albaik owns numerous registrations in the United States for the ALBAIK Marks, including the following:

| Mark | App. No. / App. Date | Reg. No. / Reg. Date | Goods/Services |
|---|---|---|---|
| ALBAIK | 79/167,871 Apr. 22, 2015 | 4,966,839 May 31, 2016 | *In most relevant part:* Restaurant services, namely, providing of food and beverages for consumption on and off the premises |

| Mark | App. No. / App. Date | Reg. No. / Reg. Date | Goods/Services |
|---|---|---|---|
|  | 97/667,903 Nov. 08, 2022 | 7,431,551 Jul. 02, 2024 | *In most relevant part:* Providing food and drink; restaurant services, namely, providing of food and beverage for consumption on and off the premises; catering services and mobile catering services; eat-in and take-out food restaurant services |
|  | 97/911,014 Apr. 27, 2023 | 7,806,074 May 27, 2025 | *In most relevant part:* Providing food and drink; restaurant services, namely, providing of food and beverage for consumption on and off the premises; catering services and mobile catering services; eat-in and take-out food restaurant services |
|  | 97/910,998 Apr. 27, 2023 | 7,806,073 May 27, 2025 | *In most relevant part:* Providing food and drink; restaurant services, namely, providing of food and beverage for consumption on and off the premises; catering services and mobile catering services; eat-in and take-out food restaurant services |
|  The non-Latin characters in the mark transliterate to "EL BAIK." | 79/173,471 Aug. 05, 2015 | 5,188,729 Apr. 25, 2017 | *In most relevant part:* Services for providing food and drink |

| Mark | App. No. / App. Date | Reg. No. / Reg. Date | Goods/Services |
|---|---|---|---|
|  The non-Latin characters in the mark transliterate to "AL BAIK." | 79/167,870 Apr. 22, 2015 | 4,966,838 May 31, 2016 | *In most relevant part:* <br><br> Restaurant services, namely, providing of food and beverages for consumption on and off the premises |
|  The non-Latin characters in the mark transliterate to "AL BAIK." | 97/667,936 Nov. 08, 2022 | 7,431,552 Jul. 02, 2024 | *In most relevant part:* <br><br> Providing food and drink; restaurant services, namely, providing of food and beverage for consumption on and off the premises; catering services and mobile catering services; eat-in and take-out food restaurant services |

These registrations are valid and subsisting. Copies of the registration certificates of each of these marks are attached hereto as **Exhibit A**.

39.     The ALBAIK Marks are also featured and promoted through high-profile sponsorships.

40.     For example, Albaik served as a sponsor of the 2025 Saudi Arabian Grand Prix F1 racing event, which attracted nearly 9.6 million attendees from around the world, including well-known celebrities like JLO and Usher. The sporting event was broadcast in the U.S. on ESPN and garnered significant attention via social media.





41.     Albaik has also served as a longtime sponsor of the Esports World Cup, one of the largest esports tournaments in the world. In 2025 alone, the event drew 36.0 million global watch hours, with the U.S. among the top five countries for viewership.





42.      Albaik is also one of the main sponsors of the King's Cup, a national football

knockout competition.







43.    On top of the 2025 Saudi Arabian Grand Prix F1, the Esports World Cup, and the King's Cup, Albaik has sponsored events such as the Saudi Youth Sports Initiative, the Spanish Football League (also known as La Lega), and others.

44.    In addition to the ALBAIK Marks, Albaik developed a unique visual brand identity featuring a bold red, orange, and yellow color scheme central throughout its restaurants, marketing, websites, social media, etc. This visual brand identity enables consumers to readily identify and distinguish Albaik and its products from competitors.







 

### D. Albaik's Popularity in the United States

45.      Albaik's careful, measured growth includes expansion of its ALBAIK brand into the U.S. As part of its expansion efforts, Albaik entered into licensing arrangements to offer ALBAIK products/services to U.S. consumers in various U.S. locations. The U.S. is an incredibly important market for Albaik, and it continues to work toward growing its U.S. presence.

46.      Additionally, U.S. consumers encountering Albaik through travel to the Middle East region have contributed to Albaik's broad notoriety. In 2024, the U.S. accounted for the largest share of tourists to KSA from the Western Hemisphere, totaling nearly half a million.

47.      The growing Arab diaspora communities in the U.S., which are among the fastest growing diaspora groups in the country, also play a role in cementing recognition of the ALBAIK brand in the U.S. For example, a Los Angeles based content creator highlighted her visit to an ALBAIK restaurant during a family trip to Saudi Arabia in a TikTok video viewed over 1.2 million times.



48.     Illinois ranks among the top states for Arab Americans, with Chicago recognized as one of the largest Arab American urban centers in the country, accounting for approximately 90% of the state's Arab American population.

49.     Albaik's popularity among U.S. consumers is demonstrated by its frequent, longstanding coverage in media and widespread social media posts. Albaik has been featured in U.S. news media, including in articles in *NBC News*, *Bloomberg*, *Business Insider*, *The Wall Street Journal,* and *CNN*.

50.     An article from 2011 in *CNN Travel* recognized Albaik as one of the top eight foreign fast-food chains "worth a taste." *See* Sean O'Neill, *8 foreign fast-food chains worth a taste*, CNN TRAVEL (September 26, 2011), https://www.cnn.com/travel/article/foreign-fast-food-bt.

51.     An ALBAIK restaurant was even featured in an episode of Anthony Bourdain's hit TV show "No Reservations" on the Travel Channel.

52.     In 2020, *The Wall Street Journal* reported that Albaik was "drawing some of the longest lines" all through "word-of-mouth" at Expo 2020 Dubai, which attracted over 24 million visitors from around the world. *See* Rory Jones, *World's Fair Made Burgers and Ice Cream Cones a Hit – Now Saudi Chicken Nuggets*, THE WALL STREET JOURNAL (Nov. 7, 2021), https://www.wsj.com/business/hospitality/worlds-fair-burgers-ice-cream-al-baik-chicken-nuggets-dubai-expo-11636308358.

53.     Two years later, Albaik opened five mobile restaurants in Doha during the 2022 FIFA World Cup in Qatar, with the U.S. being among the top visiting nations. According to a 2022 article in *Aljazeera*, people "wait[ed] patiently in long queues…for a taste of delectable fried chicken from a well-known Saudi Arabian fast food chain," where it took upwards of 50 minutes to finally get an order. *See* Hafsa Adil, *Football and fried chicken: Saudi Al Baik spreads wings in Qatar*, ALJAZEERA Nov. 18, 2022), https://www.aljazeera.com/features/2022/11/18/football-and-fried-chicken-saudi-al-baik-spreads-wings-in-qatar.

54.     Albaik is also popular on social media, including social media directed to the U.S. market. Travelers and global food influencers (as shown below) share photos, reviews, and videos of Albaik's signature dishes, highlighting the long queues and excitement around the ALBAIK brand. For example, a popular food influencer based in Canada with a significant U.S. following, shared their experience trying Albaik with his 3.3 million followers.

20



55.     Viral posts, food reviews, and travel vlogs frequently showcase the ALBAIK brand. U.S. consumers regularly comment on and engage with Albaik's social media posts, as shown below, requesting that Albaik open restaurant locations near them.











56.     Albaik's robust social media presence has also garnered it recognition amongst U.S. consumers.

57.     As a result, Albaik's brand has achieved extensive exposure and widespread recognition in the U.S. long before Defendants' attempt to enter the U.S. market.

**DEFENDANTS' WRONGFUL ACTIVITIES**

58.     Aware of Albaik's success and hoping to profit off of it, Defendants are working to exploit Albaik's goodwill and reputation for their own commercial gain.

59.    Rather than develop their own brand name or identity, Defendants hope to ride on Albaik's coattails by adopting the counterfeit mark AL-BAAIK (the "Counterfeit Mark").



60.    Defendants recently announced the upcoming opening of a restaurant in Chicago through an Instagram post by @albaikchicago:



61.    Concerned with Defendants' encroachment of its rights in the U.S. market, Albaik initiated an investigation into these announcements. Albaik's investigator spoke with Shehbaz Hoddadi, who identified himself as the director of operations of AB Canada and confirmed that Defendants are currently working on opening a restaurant at 6250 N. California Ave, Chicago, Illinois 60659-2608 (the "Counterfeit Restaurant").

62.    Upon information and belief, AB Canada is closely affiliated with AB Foods Trading and is responsible for AB Foods Trading's operations in North America. The registered directors of AB Canada are Shehbaz Shaukat Hoddadi, with an address in Canada, and Bilal Syed, with an address in India. Upon information and belief, Mr. Syed is the founder and managing director of AB Foods Trading. Mr. Hoddadi is identified on AB Foods Trading's website as the

24

managing director of operations and part of AB Foods Trading's "North America Leadership Team."

63. Albaik's investigator visited the planned location and identified signs depicting the Counterfeit Mark indicating the Counterfeit Restaurant is "coming soon."





64. Based on Albaik's investigation, the Counterfeit Restaurant may open as early as this summer.

65. Albaik's investigation also identified AB Chicago and AB Midwest, each an LLC registered with the same address as the Counterfeit Restaurant. Upon information and belief,

AB Chicago and AB Midwest are closely related entities with overlapping managers. For example, Defendants Thara and Ahmed are the registered managers of both AB Chicago and AB Midwest.

66. Upon information and belief, Defendants AB Chicago (of which Defendants Thara, Khan, and Ahmed are the registered managers), AB Midwest (of which Defendants Hassan, Thara, Ahmed, and S. Ahmed are the registered managers) or Defendants Thara, Khan, Ahmed, Hassan, and S. Ahmed (in their individual capacities) own and/or intend to operate the Counterfeit Restaurant as a franchisee of the AB Foods Trading Defendants.

67. In addition to the upcoming launch of the Counterfeit Restaurant, Albaik also became aware of a trademark application filed with the United States Patent and Trademark Office in the name of AB Canada, assigned Serial No. 98/405,996, for the following mark, incorporating the Counterfeit Mark and a chicken logo (the "Infringing Application"):



68. The Infringing Application has been refused registration by the USPTO on the basis of a likelihood of confusion with Albaik's ALBAIK Marks that are the subject of U.S. Trademark Registration Nos. 4,966,839, 7,431,551 and 7,431,552.

69. But this is not the first time AB Foods Trading has partnered with franchisees and licensees to trade on Albaik's hard-earned reputation and success for their own gain. For years, the AB Foods Trading Defendants have sought to replicate Albaik's achievements outside the U.S. by misappropriating the ALBAIK Marks.

26

70. After initially launching in India under the Counterfeit Mark, the AB Foods Trading Defendants expanded into the franchising business. They now advertise their knock-off franchise as a "moderate investment business offering attractive returns." In connection with these services, the AB Foods Trading Defendants operates the websites al-baik.com and al-baaik.com, on which they provide information about their restaurants and encourage individuals to reach out to them for franchising opportunities.

71. Albaik has a history of enforcing its intellectual property rights against the AB Foods Trading Defendants overseas. Albaik has contacted the AB Foods Trading Defendants on numerous occasions objecting to the AB Foods Trading Defendants' use of confusingly similar marks, logos, and color scheme outside of the U.S., demanding that the AB Foods Trading Defendants cease and desist their unlawful infringement.

72. The Counterfeit Restaurant is merely the latest step in this ongoing scheme, which is now targeting U.S. consumers. The Counterfeit Mark is virtually indistinguishable from the ALBAIK Marks. Defendants use the Counterfeit Mark with two spellings (shown below), though the difference is virtually undetectable, and both versions are pronounced the same as Albaik's mark.



**The ALBAIK Mark**                    **The Counterfeit Mark**

73. Further contributing to their deceptive nature, Defendants use the Counterfeit Mark in the same and/or a confusingly similar shade of red color used by Albaik for its ALBAIK logo and as a critical part of its visual brand identity.

27

74.     Defendants' actions extend far beyond merely adopting confusingly similar marks. Indeed, Defendants are systematically replicating Albaik's brand identity and business.

75.     Defendants offer or plan to offer nearly identical menu items as those sold by Albaik. For example, they advertise their "Crispy Broasted Chicken" as their "[s]ignature juicy chicken marinated with special Al-Baaik seasoning and Broasted to perfection" served with their "signature garlic sauce."



**Crispy Broasted Chicken 2 pcs**

Signature juicy chicken marinated with special Al-Baaik seasoning and Broasted to perfection served with our signature garlic sauce Sprinkles: Original Peri Peri, Lemon Pepper, Chilli Garlic



76.     As detailed above, Albaik is known for both—its broasted chicken and iconic garlic sauce are a core part of Albaik's brand. Defendants have even adopted the slogan "THE TASTE OF THE MIDDLE EAST", seeking to evoke Albaik's recognition in the region.

77.     Defendants' deliberate imitation extends to the overall look and feel of their advertising. Defendants mimic Albaik's advertising strategy by adopting the same elements in their advertisements, to create a strong visual resemblance between the parties.



**Albaik's Ads**



**Defendants' Ads**



**Albaik's Ads**



**Defendants' Ads**

78.        Defendants' imitation of Albaik's visual brand identity carries over to the Counterfeit Restaurant, which displays signage featuring Albaik's red, yellow, and white color scheme to aid in deceiving consumers into believing the restaurant is part of Albaik.



**Albaik's Ads**



**Defendants' Ads**

29

79.     Defendants have gone so far as to claim to uphold the same core corporate principles as Albaik, advertising that they are "dedicated to innovation, sustainability, and community."

80.     The AB Foods Trading Defendants even impersonate Albaik's unique story by claiming that their goal is to provide consumers with "high quality chicken meals, served fast and courteously, in a clean and inviting environment and at the best value for money." This language is copied almost verbatim from Albaik's website, in which Albaik describes that it began when Mr. AbuGhazalah saw a need for "high quality affordable food, served fast and courteously, in a clean and inviting environment."

81.     Defendants' branding choices are deliberately calculated to mislead the public into believing the AB Foods Trading Defendants' restaurants are associated with AlBaik.

82.     Indeed, there is already evidence that consumers in the U.S. associate the Counterfeit Restaurant with Albaik. In a comment on Defendants' Facebook post advertising the launch of the Counterfeit Restaurant, a consumer inquired whether Defendants were "the same company as the one in Madina"—the location of one of Albaik's most popular locations.



83.     Defendants have adopted and intend to use the Counterfeit Mark in connection with restaurant and franchising services in willful disregard of Albaik's intellectual property rights and with the intent to trade upon Albaik's reputation and goodwill. As franchisors, the AB Foods Trading Defendants know that their franchisees', including the AB Chicago Defendants', use of the Counterfeit Mark with goods and services identical to those offered by Albaik is not approved by Albaik and exploits the goodwill that Albaik has developed in its ALBAIK Marks.

84.     Defendants' use of the Counterfeit Mark for restaurant services deceptively misleads consumers into believing that the Counterfeit Restaurant is part of Albaik's famous restaurant chain and/or an official licensee or affiliate of Albaik, when it is not. In addition, Defendants' use of the Counterfeit Mark creates the false impression that Albaik endorses or otherwise approves of the products and services provided by Defendants. Thus, Defendants' unlawful use of the Counterfeit Mark has, and is likely to continue to, cause confusion as to the source, sponsorship, or affiliation of Defendants' services and products. Upon information and belief, Defendants engaged in the activities complained of herein with the intent to trade upon Albaik's reputation and goodwill. Defendants' actions constitute willful and intentional infringement. If not enjoined, Defendants' unlawful conduct will continue to harm the goodwill and reputation that Albaik has carefully cultivated at great labor and expense.

## **INJURY TO ALBAIK**

85.     Defendants' unauthorized use of the Counterfeit Mark is likely to cause consumer confusion, mistake, and deception between the source of Defendants, their goods and services, their business, and/or their commercial activities and Albaik, its goods and services, its business, and/or its commercial activities.

86.     Defendants' use of the Counterfeit Mark actually and irreparably injures the public and Albaik by deceiving customers into wrongly believing that the Counterfeit Restaurant is affiliated with, sponsored by, or otherwise approved by Albaik.

87.     Defendants' unauthorized use of the Counterfeit Mark has damaged, irreparably injured and, if permitted to continue, will further damage and irreparably injure Albaik, the ALBAIK Marks, and Albaik's reputation and the goodwill associated with the ALBAIK Marks as well as the public's interest in being free from confusion, mistake, and deception.

88.     Defendants knew, or should have known, that their unauthorized use of the Counterfeit Mark violates Albaik's rights in the ALBAIK Marks. Thus, Defendants have acted knowingly, willfully, in reckless disregard for Albaik's rights, and in bad faith.

89.     Defendants, by their actions, have irreparably injured Albaik. Such irreparable injury will continue unless Defendants are enjoined from further violation of Albaik's rights, for which Albaik has no adequate remedy at law.

**FIRST CAUSE OF ACTION**
**Federal Trademark Counterfeiting Against All Defendants under**
**Sections 32(1)(b), 34(d) of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d)**

90.     Albaik repeats and incorporates by reference the allegations contained in the foregoing paragraphs 1-89 as if stated fully herein.

91.     Albaik owns the federally registered ALBAIK Marks, namely, Trademark Registration Nos. 4,966,839; 7,431,551; and 7,806,074.

92.     Without consent, Defendants are knowingly using and/or intend to use in commerce reproductions, copies, and colorable imitations of Albaik's ALBAIK Marks in connection with the sale, offering for sale, distribution, and advertising of goods and services with

which such use is likely to cause confusion, or to cause mistake, or to deceive in violation of Sections 32(1)(b), 34(d) of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d).

## SECOND CAUSE OF ACTION
### Trademark Infringement
### Against All Defendants Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)

93.     Albaik repeats and realleges by reference the allegations set forth in paragraphs 1-92, as if fully stated herein.

94.     Without consent, Defendants are using and/or intend to use in commerce reproductions, copies, and colorable imitations of Albaik's ALBAIK Marks in connection with the offering, distribution, and advertising of goods and services, which is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act.

## THIRD CAUSE OF ACTION
### Trademark Infringement, False Designation of Origin,
### Passing Off, and Unfair Competition Against All Defendants Under
### Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)

95.     Albaik repeats and realleges by reference the allegations set forth in paragraphs 1-94, as if fully stated herein.

96.     Defendants' use of the Counterfeit Mark, as described above, is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Defendants, their products/services, and/or their commercial activities by or with Albaik, and thus constitutes trademark infringement, false designation of origin, passing off, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**FOURTH CAUSE OF ACTION**
**Trademark Infringement and Unfair Competition**
**Against All Defendants Under Illinois Law**

97.     Albaik repeats and realleges by reference the allegations set forth in paragraphs 1-96, as if fully stated herein.

98.     Albaik is the exclusive owner of the ALBAIK Marks for restaurant services and related goods.

99.     Defendants' acts complained of herein create the impression in the mind of the public that Albaik is responsible for the quality and performance of Defendants' goods and services or is otherwise affiliated, connected, or associated with Defendants, and/or their commercial activities and thus Defendants' acts constitute common-law trademark and trade name infringement of Albaik's proprietary rights in the ALBAIK Marks, misappropriation of Albaik's goodwill in the ALBAIK Marks, and unfair competition under the common laws of Illinois.

**FIFTH CAUSE OF ACTION**
**Violation of Illinois Law Against All Defendants Under**
**the Uniform Deceptive Trade Practices Act, 815 ILCS 510**

100.     Albaik repeats and realleges by reference the allegations set forth in paragraphs 1-99, as if fully stated herein.

101.     Defendants have been fully aware of Albaik's prior use, ownership, and registration of the ALBAIK Marks, and are well aware that Defendants' continued use of the confusingly similar Counterfeit Mark for restaurant services is in bad faith, absent lawful purpose or authorization.

102.     The circumstances related to this dispute occur substantially and primarily in Illinois.

34

103.    As a proximate result of Defendants' actions, Albaik has suffered and will continue to suffer irreparable harm.

104.    Defendants' acts complained of herein cause a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of goods and services and cause a likelihood of confusion or misunderstanding as to the affiliation or association of its goods and services and thus Defendants' acts constitute deceptive trade practices or acts in the conduct of business, trade, or commerce, and in the furnishing of services and products, in violation of the Uniform Deceptive Trade Practices Act, 815 Comp. Stat. 510/1 *et seq.*

105.    Defendants' conduct is willful, deliberate, in bad faith, and undertaken with the knowledge of Albaik's prior rights, and with full knowledge that Defendants' have no right, license, or authority to use the ALBAIK Marks or any confusingly similar variants and are intended to exploit the goodwill that Albaik has built up in its ALBAIK Marks.

## SIXTH CAUSE OF ACTION
### Contributory Trademark Infringement and Counterfeiting
### Against the AB Foods Trading Defendants

106.    Albaik repeats and incorporates by reference the allegations set forth in paragraphs 1-105, as if fully stated herein.

107.    The AB Foods Trading Defendants offer restaurant services using the Counterfeit Mark, which is counterfeit of and confusingly similar to the ALBAIK Marks. To the extent the AB Foods Trading Defendants contend that the AB Chicago Defendants are the source of the Counterfeit Restaurant and/or use the Counterfeit Mark in commerce in the United States, the AB Foods Trading Defendants are nonetheless knowingly facilitating the sale, offering for sale, distribution, and/or advertising of the Counterfeit Restaurant and related goods and services in their capacity as franchisors, in a manner that is likely to cause confusion or to cause mistake,

or to deceive as to the affiliation, connection, or association with Albaik, or as to the origin, sponsorship, or approval of such goods and services, in violation of 15 U.S.C. § 1114 and/or 15 U.S.C. § 1125(a)(1)(A).

108.     The AB Foods Trading Defendants have known or have had reason to know of this counterfeiting and infringement of Albaik's trademark rights, or have been willfully blind to all reasonable indications of such counterfeiting and infringement.

109.     The AB Foods Trading Defendants have materially supported and exercised control over this counterfeiting and infringement of Albaik's trademark rights, and have facilitated, supported, and enabled the advertising and sale of counterfeit goods and services through their own conduct.

110.     The AB Foods Trading Defendants have engaged in and continue to engage in contributory trademark infringement and counterfeiting of the ALBAIK Marks.

111.     The AB Foods Trading Defendants have knowingly contributed to the infringing acts alleged herein without authorization, license, or consent from Albaik.

112.     As a result of the AB Foods Trading Defendants' contributory counterfeiting and infringement, Albaik has suffered damages and will continue to suffer damages, including lost sales, lost profits, and lost goodwill.

113.     The AB Foods Trading Defendants' contributory counterfeiting and infringement have also caused, and will inevitably cause, irreparable injury to Albaik, including its business, reputation, and goodwill, and on information and belief, unless restrained and enjoined, the AB Foods Trading Defendants will continue to contribute to the infringement and counterfeiting of Albaik's ALBAIK Marks. Albaik's remedy at law is not adequate to redress the harm the AB Foods Trading Defendants have caused and will continue to cause until their conduct

36

is restrained, entitling Albaik to injunctive relief pursuant to 15 U.S.C. § 1116 and the equitable authority of this Court.

**SEVENTH CAUSE OF ACTION**
**Vicarious Trademark Infringement and Counterfeiting**
**Against the AB Foods Trading Defendants**

114.     Albaik repeats and incorporates by reference the allegations set forth in paragraphs 1-113, as if fully stated herein.

115.     The AB Foods Trading Defendants offer restaurant services using the Counterfeit Mark, which is a counterfeit of and confusingly similar to the ALBAIK Marks. To the extent the AB Foods Trading Defendants contend that the AB Chicago Defendants are the source of the Counterfeit Restaurant and/or use the Counterfeit Mark in commerce in the United States, the AB Foods Trading Defendants are nonetheless knowingly facilitating the sale, offering for sale, distribution, and/or advertising of the Counterfeit Restaurant and related goods and services in their capacity as franchisors, in a manner that is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association with Albaik, or as to the origin, sponsorship, or approval of such goods and services, in violation of 15 U.S.C. § 1114 and/or 15 U.S.C. § 1125(a)(1)(A).

116.     The AB Food Trading Defendants are vicariously liable for their partners', including the AB Chicago Defendants', direct counterfeiting and infringement via the sale, offering for sale, distribution, and/or advertising of the Counterfeit Restaurant and related goods and services. Upon information and belief, the AB Foods Trading Defendants have apparent or actual partnerships, and the AB Foods Trading Defendants and the AB Chicago Defendants have the authority to bind one another in transactions with third party customers and/or exercise joint ownership or control over the Counterfeit Restaurant.

117.     As a result of the AB Foods Trading Defendants' vicarious counterfeiting and infringement, Albaik has suffered damages and will continue to suffer damages, including lost sales, lost profits, and lost goodwill.

118.     The AB Foods Trading Defendants' vicarious counterfeiting and infringement have also caused, and will continue to cause, irreparable injury to Albaik, including its business, reputation, and goodwill and on information and belief, unless restrained and enjoined, the AB Foods Trading Defendants will continue to contribute to the infringement and counterfeiting of Albaik's ALBAIK Marks. Albaik's remedy at law is not adequate to redress the harm the AB Foods Trading Defendants have caused and will continue to cause until their conduct is restrained, entitling Albaik to injunctive relief pursuant to 15 U.S.C. § 1116 and the equitable authority of this Court.

## PRAYER FOR RELIEF

WHEREFORE, Albaik respectfully prays for judgment against Defendants as follows:

A.     An Order declaring that Defendants' have violated the Lanham Act, the Uniform Deceptive Trade Practices Act, and Illinois common law, and that such violations were willful and intentional, making this an exceptional case.

B.     An Order declaring that the AB Foods Trading Defendants are contributorily and vicariously liable for the AB Chicago Defendants' violations of the Lanham Act, the Uniform Deceptive Trade Practices Act, and Illinois common law, and that such violations were willful and intentional, making this an exceptional case.

C.     An Order permanently enjoining Defendants, their affiliates, officers, agents, servants, employees, attorneys, owners, and all persons acting for, with, by, through, under, or in active concert with it or them from directly or indirectly:

i.      Using, registering, or seeking to register any name, mark, logo, trade name, company name, source identifier, or designation comprised of or containing the ALBAIK Marks, or any other confusingly similar name, mark, logo, trade name, company name, source identifier, or designation, including the Counterfeit Mark, in any manner likely to cause confusion with Albaik or the ALBAIK Marks, or to otherwise injure Albaik and/or its reputation;

ii.      Engaging in or contributing to engage in counterfeiting of the ALBAIK Marks, any further trademark infringement, unfair competition, or deceptive business practices, including making, offering for sale, or selling any products that feature marks confusingly similar to the ALBAIK Marks, and doing any other act calculated or likely to induce or cause confusion or the mistaken belief that Defendants or their products or services are in any way affiliated, connected, or otherwise associated with Albaik or its products and services;

iii.      Representing, by any means whatsoever, directly or indirectly, that Defendants, their goods or services, and/or their activities originate from, are sponsored by, or are associated, affiliated, or connected with Albaik in any way; and

iv.      Assisting, aiding, and/or abetting any other person or business entity in engaging in or performing any of the above activities.

D.      An Order directing Defendants to, within thirty (30) days after the entry of the injunction, file with this Court and serve on Albaik's attorneys a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

E.      An Order requiring that Defendant immediately retract from all distribution channels and destroy all products, packaging, signage, advertisements, promotional materials,

stationery, forms, and/or materials and things that contain or bear the Counterfeit Mark or any other name, mark, trade name, company name, source identifier, or designation that contains or is confusingly similar to the ALBAIK Marks.

F.      An Order requiring Defendants to account to Albaik all profits wrongfully derived by their unlawful conduct and to pay to Albaik.

G.      An order for an award for Defendants' profits and Albaik's damages under 15 U.S.C. § 1117(a), enhanced and treble damages included for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a).

H.      In the alternative to an award for Defendants' profits and Albaik's actual damages, an order for a reward of enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods, for statutory damages under 15 U.S.C. § 1117(c) in the amount of up to $2,000,000 per counterfeit mark per type of goods/services sold, offered for sale, or distributed as the Court considers just, which Albaik may elect prior to the rendering of final judgment.

I.      An order requiring that Defendants pay Albaik for all of Albaik's litigation expenses, including reasonable attorneys' fees and costs under 15 U.S.C. § 1117 and the Uniform Deceptive Trade Practices Act.

J.      An order granting an injunction to the extent available under the Deceptive Trade Practices Act.

K.      An Order requiring the USPTO to refuse registration of U.S. Trademark Application No. 98/405,996 and order the application be abandoned pursuant to 15 U.S.C. § 1119.

L.       An Order for such other and further relief as the Court may deem just and equitable.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Albaik respectfully demands a trial by jury on all issues properly triable by a jury in this action.

Dated:  August 21, 2025                          Respectfully submitted,

*/s/ Glenn E. Davis*
Anton J. Marqui, Esq.
Glenn E. Davis, Esq.
Charles N. Insler, Esq.
HeplerBroom LLC
70 West Madison, Suite 2600
Chicago, Illinois 60602
Phone (312) 230-9100
Fax (312) 230-9201
anton.marqui@heplerbroom.com
glenn.davis@heplerbroom.com
charles.insler@heplerbroom.com

Danny M. Awdeh, Esq. (*pro hac vice* forthcoming)
Daniel S. Stringer, Esq. (*pro hac vice* forthcoming)
Hajra Nashin, Esq. (*pro hac vice* forthcoming)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Ave, N.W. Washington, D.C.
20001-4413
Phone (202) 408-4000
Fax (202) 408-4400
danny.awdeh@finnegan.com
daniel.stringer@finnegan.com
hajra.nashin@finnegan.com

*Attorneys for Plaintiff*
*El Baik Food Systems Co S.A.*

41